```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
THE MILESTONE AVIATION GROUP LIMITED,                            :
                                                                 :
                        Plaintiff,                               :
                                                                 :
           -v-                                                   :   24 Civ. 3136 (JPC)
                                                                 :
DSV AIR & SEA INC. and DSV OCEAN TRANSPORT                       :   OPINION AND ORDER
A/S,                                                             :
                                                                 :
                        Defendants.                              :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Plaintiff The Milestone Aviation Group Limited ("Milestone") brings this action against Defendants DSV Air & Sea Inc. and DSV Ocean Transport A/S (collectively, "DSV") for breach of contract, negligence, and breach of bailment obligations. Pending before the Court is DSV's motion to dismiss Milestone's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For reasons that follow, the Court denies DSV's motion.

### I. Background

**A.   Facts**[1]

On July 27, 2023, Milestone entered into a transportation agreement with DSV, which called for the transportation of a 2013 Sikorsky Model S92A helicopter (the "Helicopter") from Rzeszow, Poland to Lafayette, Louisiana. Am. Compl. ¶¶ 1, 18. Pursuant to that agreement, DSV

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint, Dkt. 18 ("Am. Compl."), and the documents incorporated therein by reference. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

was to transport the Helicopter first via truck to a port in Gothenburg, Sweden, then aboard the vessel *Don Pasquale* across the Atlantic Ocean to a port in Brunswick, Georgia, and finally by truck again from Brunswick to Lafayette. *Id.* ¶ 23. DSV subcontracted the final leg of the journey to International Machine Transport USA ("IMT"). *Id*. ¶¶ 23-24, 28.

The Helicopter was transported from Rzeszow to Brunswick without incident, where it was placed on a flatbed tractor/trailer operated by IMT (the "Semi-Truck") for delivery to Lafayette. *Id.* ¶¶ 27-28. On September 22, 2023, at 6:30 a.m., the Semi-Truck, carrying the Helicopter, departed a truck stop in Slidell, Louisiana, accompanied by two escort vehicles arranged by DSV—one in front and one behind the Semi-Truck. *Id.* ¶¶ 30-32. The lead escort vehicle was equipped with a tall pole protruding from its bumper, replicating the height of the Helicopter on the Semi-Truck, to ensure that the Helicopter would pass safely under any overhead obstacle without damage. *Id.* ¶ 30.

The Semi-Truck and escort vehicles were traveling westbound on Interstate 12 along the intended route to Lafayette when the driver of the Semi-Truck took Exit 10, intending to park at a truck stop just south of the highway. *Id.* ¶ 33. This deviation from the planned route occurred because the Semi-Truck had left its prior stop early and could not enter Baton Rouge until 9:00 a.m. that day due to a travel restriction on permitted trucks. *Id.* ¶¶ 33-34. Thus, the driver of the Semi-Truck decided to stay at the truck stop until that travel curfew was lifted, at which point he planned to call for a required police escort to cross the Mississippi River. *Id.* ¶ 34.

According to the driver of the lead escort vehicle, as later memorialized in a written statement, while en route to the unplanned truck stop, he informed the driver of the Semi-Truck by radio that his vehicle's pole had struck a bridge when passing under it. *Id.* ¶ 35. The drivers of the Semi-Truck and the rear escort vehicle both deny receiving such a radio message despite

2

being on the same radio frequency, and neither driver received a cell phone call from the front escort vehicle driver. *Id.*

According to IMT's incident report and the Semi-Truck driver's written statement, the driver of the lead escort vehicle continued to the truck stop after its pole came in contact with the bridge, instead of stopping to ensure that the driver of the Semi-Truck was aware of the lack of sufficient clearance. *Id.* ¶ 36. The Semi-Truck, still with the Helicopter on its flatbed, proceeded under the bridge at fifteen miles per hour, at which point the Helicopter struck the overpass, causing substantial damage and rendering the Helicopter a total constructive loss. *Id.* ¶¶ 36, 38.

**B.    Procedural History**

Milestone filed a Complaint against DSV on April 24, 2024, Dkt. 1, which it amended on July 8, 2024, Dkt. 18. The Amended Complaint alleges three causes of action against DSV: (1) breach of contract, Am. Compl. ¶¶ 39-44, (2) negligence, *id.* ¶¶ 45-49, and (3) breach of bailment obligations, *id.* ¶¶ 50-53. On July 30, 2024, DSV moved to dismiss Count II (negligence) and Count III (breach of bailment obligations). Dkts. 23, 24 ("Motion"). Milestone opposed the Motion on August 20, 2024, Dkt. 26 ("Opposition"), and DSV filed its reply on September 3, 2024, Dkt. 27 ("Reply"); *see* Dkt. 28 (duplicate copy of the Reply filed the same day).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive a motion to dismiss, it must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility depends on whether the "plead[ed] factual content . . . allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While a court presumes as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff, *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), this presumption does not apply to "'legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2007) (quoting *Iqbal*, 556 U.S. at 678).  When deciding a Rule 12(b)(6) motion, a district court may consider, in addition to the factual allegations in the complaint, "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III. Discussion

DSV makes two arguments in support of its motion to dismiss.  First, DSV argues that Milestone's "bailment and tort claims are preempted by New York's economic loss doctrine." Motion at 2-5.  Second, DSV argues that Milestone has not adequately pleaded facts that would support a claim for gross negligence.  *Id.* at 6-7.[2]  The Court addresses each argument in turn.

---

[2] DSV mentions two other arguments in its briefing.  First, DSV argues—in only one footnote in its Motion and one footnote in its Reply—that Milestone's tort claims are preempted by the Federal Aviation Administration Authorization Act of 1994.  Motion at 5 n.2; Reply at 4 n.4.  An argument is forfeited, however, "where it has not been sufficiently argued in the briefs, such as when it is only addressed in a footnote." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation marks omitted).  The Court therefore does not address this argument.

Second, in its Reply, DSV argues that the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.*, preempts Milestone's claims for negligence and bailment.  Reply at 1-3. DSV has similarly forfeited this argument by raising it for the first time in its Reply brief. *See Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived.").  Setting any forfeiture aside, it does appear, as Milestone recognizes, that COGSA "potentially is implicated through the Sea Waybill's terms." Opposition at 4; *see also* Am. Compl., Exh. C (Sea Waybill) at 2 § VI(24) ("In the case the contract evidenced by this Sea Waybill is subject to [COGSA], then the provisions stated in [COGSA] shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's custody.").  The Second Circuit has explained "that

A.     **New York's Economic Loss Doctrine**

DSV first argues that Counts II and III of the Amended Complaint are preempted by New York's economic loss doctrine.  Motion at 2-5.  The general rule under New York law is that economic loss is not recoverable under a theory of strict products liability.  *See IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 220 N.E.3d 646, 656 (N.Y. 2023).  The New York Court of Appeals developed the economic loss doctrine "as a way of enforcing the dictates of privity in product liability law and preventing tort remedies from eliminating the customary limitations involved in cases addressing the sale of goods."  *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000).  The New York Court of Appeals, however, recently clarified that the "economic loss rule . . . does not have application beyond the products liability context."  *IKB Int'l*, 220 N.E.3d at 656 (internal quotation marks omitted); *see also Goldrich v. Watkins Wellness*, No. 22 Civ. 3769 (KMK), 2024 WL 1194716, at *3 n.3 (S.D.N.Y. Mar. 20, 2024) (recognizing the clarification).[3]

---

COGSA should be understood to preempt contrary state law claims of liability where . . . COGSA's default rules are extended by a maritime contract and governed under federal maritime law."  *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 846 F. App'x 37, 40 (2d Cir. 2021) (summary order); *see also Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 160 (S.D.N.Y. 2020) ("In essence, federal admiralty law preempts state statutes and common law to the extent that those laws allow for a longer limitations period or a greater recovery than COGSA permits."), *aff'd*, 846 F. App'x 37; *Alpina Ins. Co., Ltd. v. Trans Am. Trucking Serv., Inc.*, No. 03 Civ. 740 (WHP), 2004 WL 1673310, at *4 (S.D.N.Y. July 28, 2004) ("When COGSA limits liability, it preempts state law, even if the claims are phrased as common law causes of action.").  Even if COGSA applies, as explained below, Milestone plausibly states a claim for relief.  *See infra* III.B; *see also Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 587 n.3 (2d Cir. 2005) ("[W]e have explicitly held that a COGSA claim may be a mixed tort, contract and bailment cause of action." (internal quotation marks omitted)).  To the extent that COGSA limits DSV's liability or Milestone's damages in a way contrary to state law, DSV may properly raise such arguments in a future summary judgment motion or in trial-related briefing.

[3] DSV recognizes in its Reply that "[t]he New York Court of Appeals recently clarified that the economic loss rule 'does not have application beyond the products liability context.'" Reply at 4 n.3 (quoting *IKB Int'l*, 220 N.E.3d at 656).  Yet, somewhat oddly, in the same section of that brief, DSV also argues that Milestone's Opposition "incorrectly advances that New York's economic loss doctrine is limited to product liability cases and as such is inapplicable to the instant

As mentioned, Milestone brings claims asserting breach of contract, negligence, and breach of bailment; it does not allege a products liability claim. The economic loss rule is therefore inapplicable, and the Court denies DSV's motion to dismiss Counts II and III of the Amended Complaint on the basis that those counts are preempted by New York's economic loss doctrine.[4]

## B.   Gross Negligence

In Count II, Milestone pleads, *inter alia*, that "[t]he non-delivery, damage and loss to the Helicopter was caused by [DSV's] . . . gross negligence." Compl. ¶ 47. DSV seeks dismissal of any gross negligence claim under Rule 12(b)(6). Motion at 6-7. Under New York law, a gross negligence claim may be brought if a plaintiff alleges facts plausibly suggesting damage from conduct "that smacks of intentional wrongdoing and evinces a reckless indifference to the rights of others." *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 967 N.E.2d 666, 670 (N.Y. 2012). New York courts have defined reckless conduct in the context of gross negligence as "an extreme departure from the standards of ordinary care." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009) (internal quotation marks omitted). Generally, "the question of

---

matter," and that "New York courts routinely apply the economic loss doctrine beyond the context of product liability." *Id.* at 3. In support of these latter contentions, DSV cites only to decisions which predate the New York Court of Appeals's clarification in *IKB Int'l*. *Id.*

[4] Outside the products liability context, New York courts apply the closely related "prohibition against duplicative contract and tort claims." *IKB Int'l*, 220 N.E.3d at 656. DSV does not mention this doctrine in its opening brief, and makes only a passing reference to the doctrine in its Reply. *See* Reply at 4 ("Plaintiff's claims for negligence (Count II) and bailment (Count III) are barred either under the economic loss doctrine and/or the 'well-established principle' 'that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.[']   Here, Plaintiff has *not* alleged an independent duty outside of the terms of the written agreements relied upon by Plaintiff." (quoting *Goldrich*, 2024 WL 1194716, at *3 n.3)). DSV's scant two-sentence argument in its Reply—unsupported by any relevant legal precedent, *see Goldrich*, 2024 WL 1194716, at *3 n.3 ("The Parties do not dispute that the economic loss rule applies to Plaintiff's claims, which clearly fall in the 'products liability' bucket.")—is not enough to properly raise this argument before the Court. *See Chevron Corp.*, 325 F. Supp. 3d at 379 n.21.

6

gross negligence is a matter to be determined by the trier of fact." *Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.*, 998 N.Y.S.2d 107, 109 (2d Dep't 2014).

DSV argues that Milestone "fails to plead any facts to support a claim for gross negligence," pointing only to the above-cited language in Paragraph 47 of the Amended Complaint. Motion at 6. Milestone's claim in Count II, however, incorporates the Amended Complaint's preceding factual allegations. Am. Compl. ¶ 45. DSV fails to meaningfully address those preceding paragraphs, *see generally* Motion at 6-7, which allege conduct on its part that plausibly constituted an "extreme departure from the standards of ordinary care," *AMW Materials Testing*, 584 F.3d at 454 (internal quotation marks omitted), and "evince[d] a reckless indifference to the rights of others," *Abacus Fed. Sav. Bank*, 967 N.E.2d at 670.

The alleged deviation from the planned route along Interstate 12 for the truck stop was a conscious decision to avoid a known restriction on truck travel in Baton Rouge. Am. Compl. ¶ 33. As alleged, the driver of the Semi-Truck found himself in that position because he left too early from the prior stop, either disregarding or failing to consider that restriction. *Id.* This deviation—which could have been easily avoided had the Semi-Truck driver left at a later time—created unnecessary risk, particularly given the obvious challenges in transporting cargo the size and value of the Helicopter.

The alleged conduct of the driver of the lead escort vehicle lends further support to the sufficiency of Milestone's gross negligence pleading. While that driver claims to have radioed the driver of the Semi-Truck to warn that his escort vehicle's pole had hit the bridge, the Semi-Truck driver and the back escort vehicle deny having received that warning despite being on the same radio frequency, creating a question of whether that warning was even conveyed. *Id.* ¶ 35. And despite the evident risk of catastrophic damage were the Helicopter to strike the bridge, the lead

7

escort vehicle allegedly continued down the road in the direction of the truck stop without pausing to ensure that the Semi-Truck did not try to proceed under the bridge. *Id.* ¶ 36. As a result, as alleged, the Semi-Truck driver blindly followed the lead escort vehicle, proceeded to drive under the bridge, and caused the Helicopter to strike the bridge, resulting in approximately $16 million in damages and rendering the Helicopter a total loss. *Id.* ¶¶ 36, 38, 49.

Considering these facts, Milestone has plausibly alleged that DSV acted with gross negligence. These actions, taken together, plausibly reflect conscious disregard of an obvious risk of danger to the Helicopter and reckless indifference to that cargo's safety. Accordingly, Milestone has plausibly alleged facts that, if proven, make DSV's liability under a gross negligence theory "more than a sheer possibility." *Iqbal*, 556 U.S. at 678. The Court therefore denies DSV's motion to dismiss any gross negligence claim.

### IV. Conclusion

For the reasons stated above, the Court denies DSV's motion to dismiss. DSV shall file an answer to the Amended Complaint by April 1, 2025. The parties are also ordered to appear for an Initial Pretrial Conference in accordance with Rule 16 of the Federal Rules of Civil Procedure on April 16, 2025, at 2:00 p.m., in Courtroom 12D of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. By April 9, 2025, the parties shall submit a proposed case management plan and scheduling order, a template of which can be found at https://www.nysd.uscourts.gov/hon-john-p-cronan. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 23.

SO ORDERED.

Dated: March 18, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge